# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW GLENFORD BROWN,<br><br>Defendant. | Case No. 2:11-cr-152 |

## OPINION & ORDER

Before the Court is Defendant Andrew Glenford Brown's Motion for Compassionate Release. ECF Nos. 38, 42.[1] For the reasons stated below, the motion will be **DENIED**.[2]

## I.   BACKGROUND

The defendant pleaded guilty to Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d) and Brandishing a Firearm during a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). ECF No. 16. He was assigned a total offense level of 26

---

[1] The defendant filed a "Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582 and § 4205(g)" on April 11, 2021. ECF No. 38. The Federal Public Defender's Office was appointed to represent the defendant, ECF No. 39 ¶ 1, but withdrew due to a conflict. ECF Nos. 40, 41. The Court appointed a new attorney for the defendant under the Criminal Justice Act, and counsel filed a "Motion for Reduction of Sentence" on November 5, 2021. ECF Nos. 41–42. The Court reviewed the motions and determined that both seek the same relief. *Compare* ECF No. 38 *with* ECF No. 42. Thus, the Court will construe the two filings as one motion for compassionate release.

[2] The defendant also filed a "Motion for Status Conference on Motion for Reduction of Sentence." ECF No. 55. That motion will be **DENIED** as moot.

and received 22 criminal history points.³ ECF No. 30 ¶¶ 59, 66. This resulted in a criminal history category of VI. *Id.* ¶ 66.

The defendant's advisory sentencing guidelines range was 120–150 months for the bank robbery plus an 84-month mandatory minimum for the Section 924(c) offense. ECF No. 30 ¶ 67. The Honorable Henry Coke Morgan, Jr., to whom this case was originally assigned, sentenced the defendant to 120 months of incarceration on the bank robbery, 84 months on the Section 924(c) offense to be served consecutive to the bank robbery sentence, and 60 months of supervised release on each count, to be served concurrently to each other. ECF No. 28 at 1–2.

The defendant did not appeal his conviction. However, he did file a motion to vacate under 28 U.S.C. § 2255. ECF No. 31. Judge Morgan dismissed that motion as untimely. ECF No. 37.

The defendant filed a motion for compassionate release on April 11, 2021. ECF No. 38. The government responded in opposition to the motion for compassionate release on November 24, 2021. ECF No. 42. The defendant filed a reply on December 2, 2021. ECF No. 53. The case was reassigned to this Court on March 17, 2023.

---

³ Fifteen of the defendant's 22 Criminal History Points resulted from juvenile offenses and counted under U.S.S.G. § 4A.1.1(b) and 4A.1.2(d) (U.S. SENT'G COMM'N 2011). *See* ECF No. 30 ¶¶ 61–66.

2

## II. LEGAL STANDARDS

### A. Motions for Compassionate Release

#### i. *Exhaustion*

Before the Court may consider a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must exhaust their administrative rights to appeal the Federal Bureau of Prisons' failure to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). Alternatively, once 30 days have passed after the defendant requested relief from the warden of their facility, the defendant may file a motion with the Court as though they had exhausted their administrative remedies. *Id.*; *see United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (clarifying that a defendant may satisfy the exhaustion requirement by waiting 30 days from the date of their initial request to file a motion in the district court, even if the warden has already responded to their request). The exhaustion requirement "is a non-jurisdictional claim-processing rule" and therefore "may be waived or forfeited." *Muhammad*, 16 F.4th. at 130.

#### ii. *Merits*

A court may modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) if, after considering the sentencing factors in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a [modification]." *United States v. Hargrove*, 30 F.4th 189, 197-8 (4th Cir. 2022). The overarching purpose of the compassionate release mechanism guides district courts' consideration:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on

> extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments. Thus, motions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other.

*Id.* at 197. Courts in this district have generally considered the defendant's arguments regarding extraordinary and compelling reasons for sentence modification first, then balanced the outcome of that analysis against the sentencing factors in section 3553(a). *E.g.*, *United States v. Ogun*, No. 4:12-cr-4, 2023 WL 2207114, at *7 (E.D. Va. Feb. 24, 2023); *United States v. Nurani*, No. 2:11-cr-34-3, 2023 WL 2058649, at *3 (E.D. Va. Feb. 16, 2023).

          *a.*     *Extraordinary & Compelling Reasons*

A court may modify a prisoner's sentence under § 3582(c)(1)(A)(i) if it finds "extraordinary and compelling reasons" to do so. The prisoner bears the burden of demonstrating such reasons. *See Hargrove*, 30 F.4th at 195. The United States Sentencing Commission has promulgated a policy statement, U.S.S.G. § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), superseded by regulation, U.S.S.G. § 1B1.13. The Sentencing Commission recently amended the policy statement. Effective November 1, 2023, the amended policy statement provides a non-exhaustive list of extraordinary and compelling reasons for modifying a sentence:

(1) the medical circumstances of the defendant, U.S.S.G. § 1B1.13(b)(1);

(2) the age of the defendant, U.S.S.G. § 1B1.13(b)(2);

(3) family circumstances of the defendant, U.S.S.G. § 1B1.13(b)(3);

(4) whether the defendant was a victim of abuse while incarcerated, U.S.S.G. § 1B1.13(b)(4);

(5) "[o]ther [r]easons," U.S.S.G. § 1B1.13(b)(5); or

(6) an unusually long sentence, if the defendant meets certain conditions, U.S.S.G. § 1B1.13(b)(6).

The policy statement provides that an unusually long sentence may constitute an extraordinary and compelling reason for a modification when a change in the law "would produce gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," provided that the defendant "has served at least 10 years of the term of imprisonment." U.S.S.G § 1B1.13(b)(6).

Before the amended policy statement took effect, a defendant's "relative youth at the time of [his] offenses" was one of the factors courts considered in the compassionate-release inquiry. *See McCoy*, 981 F.3d 271, 288 (4th Cir. 2020). The Sentencing Commission's amended policy statement no longer addresses youth. *See* U.S.S.G. § 1B1.13.[4] However, as noted above, "[o]ther [r]easons" may be

---

[4] The Sentencing Commission has proposed an amendment to § 4A1.2 (Definition and Instructions for Computing Criminal History) to "change how sentences for offenses committed prior to age [18] are considered in the calculation of a defendant's criminal history score; and an amendment to § 5H.1.1 to address unique sentencing considerations relating to youthful individuals," including how "[c]ertain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems . . . ." U.S. Sentencing Commission, *Proposed*

considered to determine whether extraordinary and compelling reasons exist for relief. *See* U.S.S.G. § 1B1.13(b)(5) (recognizing that "other circumstance or combination of circumstances that, when considered by themselves or together with" the previously enumerated reasons, "are similar in gravity to" the enumerated reasons).

As amended, the policy statement provides that extraordinary and compelling reasons exist, in the medical/health context, in three circumstances. First, where:

> The defendant is suffering from a terminal illness . . . serious physical or medical condition . . . serious functional or cognitive impairment . . . [or] deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(A–B). Second, where:

> The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(C). And third, where:

> . . . (i) The defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to

---

*2024 Amendments to the Federal Sentencing Guidelines*, https://perma.cc/UE8G-D5CW (last visited July 10, 2024).

>    the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
>    (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G 1B1.13(b)(1)(D)(i–iii).

Although the Fourth Circuit has not, in a published opinion, definitively set forth the standard for courts to use when evaluating compassionate release motions based on COVID-19, it has stated that the person housed in prison must demonstrate "that the risk of contracting COVID-19 is higher in prison than outside of it, and that his preexisting conditions increase the risk of experiencing a serious or fatal case of the virus." *United States v. Davis*, 99 F.4th 647, 655 (Apr. 18, 2024).

The prevailing standard applied by courts in this district and elsewhere in the Fourth Circuit is that the person housed in prison must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020); *see also, e.g.*, *Hargrove*, 30 F.4th at 196 (affirming a district court order denying relief after applying this standard); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (unpublished) (same).

The incapacitation of a defendant's parent may constitute an extraordinary and compelling reason for a sentence modification "when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C).

The policy statement also clarifies to what extent rehabilitation of the defendant can be considered in the extraordinary-and-compelling-reason analysis. It states that "rehabilitation of the defendant is not, by itself, an extraordinary and

7

compelling reason for the purposes of this policy statement;" however, rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

          b.     *18 U.S.C. § 3553(a) Factors*

After completing the extraordinary-and-compelling-reasons analysis, courts must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Mumford*, 544 F. Supp. 3d 615, 617–20 (E.D. Va. 2021). Even if a court finds extraordinary and compelling reasons to reduce a defendant's sentence, it may ultimately deny a motion for compassionate release if its analysis of the 18 U.S.C. § 3553(a) factors counsels against release. *Id.* Those factors are:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

    (3)    the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established [by the Sentencing Commission];

  (5) any pertinent policy statement [issued by the Sentencing Commission] [that is in effect on the date the defendant is sentenced except as provided in section 3742(g)];

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III. ANALYSIS

#### A. Motion for Compassionate Release

##### i. *Exhaustion*

The defendant filed a request for compassionate release with the warden of his facility on March 10, 2021. ECF No. 49-3 at 2. The warden denied that request. *Id.* at 1. The defendant waited at least 32 days to file his motion after initially requesting that the warden do so. Therefore, the Court finds that the defendant has satisfied the 30-day waiting requirement.

##### ii. *Merits*

###### a. *Extraordinary & Compelling Reasons*

The defendant bases his motion on: (1) the decision in *Dean v. United States*, 581 U.S. 62 (2017); (2) his youth at the time of the offense; (3) his mother's health

9

needs; (4) his susceptibility to the COVID-19 virus; and (5) his rehabilitation.[5] ECF Nos. 38, 43.[6] For the reasons stated below, the Court finds that none constitute extraordinary and compelling reasons justifying a sentence modification.

1. *Dean v. United States*

The defendant's first argument fails because his sentence was not unusually long, and the *Dean* decision was not a change in law that created a gross disparity in sentence lengths. In *Dean*, the United States Supreme Court clarified that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) . . . to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Dean*, 581 U.S. at 69.

The defendant posits that because Judge Morgan "did not have the benefit" of the *Dean* decision at the time of sentencing, the Court "should [now] consider the

---

[5] The defendant requests that the Court modify his sentence from 204 months of incarceration to 144 months of incarceration. ECF No. 43 at 13. Additionally, the defendant suggests that the Court modify his two concurrent terms of 60 months of supervised release to instead run consecutively, resulting in 120 months of supervised release. *Id.*

[6] The government's "Response in Opposition to Defendant's Motion for Compassionate Release" does not address any arguments raised in the defendant's counseled motion, but instead focuses on attacking the defendant's *pro se* motion. *Compare* ECF No. 49 *with* ECF No. 38 *and* ECF No. 43. In his reply brief, counsel for the defendant asserts that the government's incomplete response creates "a number of important concessions." ECF No. 53 at 1. That is not the case. While the government's omission represents a careless oversight, at best, it does not create a concession of fact that the Court is required to accept. *See, e.g.*, *United States v. Burrell*, No. 3:04-cr-364, 2023 WL 7726404, at *4 n.6 (E.D. Va. Nov. 15, 2023) (denying motion for compassionate release without any response in opposition from the government); *United States v. Kidwell*, 5:19-cr-00025-002, 2022 WL 1785293, at *1 (W.D. Va. June 1, 2022) (same). The Court received enough information from the parties to answer without the government's position on every argument.

effect of a mandatory 84-month consecutive sentence" on the 120-month sentence for the first count. ECF No. 43 at 10. The Court construes this argument to be made under U.S.S.G. § 1B1.13(b)(6). *See id.* (citing *United States v. Ikegwuonu*, No. 3:17-cr-72, 2021 WL 719160 (W.D. Wis. Feb. 24, 2021) (relying on *Dean* as a change in law in order to grant a sentence modification under § 1B1.13(b)(6)).

As an initial matter, the defendant fails to demonstrate that he received an unusually long sentence. Judge Morgan sentenced the defendant at the bottom of the advisory sentencing guidelines range, *compare* ECF No. 28 at 1–2 *with* ECF No. 30 at 67, and his term of incarceration was 80 months shorter than the median sentence length the year the defendant was sentenced, for defendants in this district who committed similar offenses.[7] Thus, the defendant does not meet the requirements for a sentence modification under § 1B1.13(b)(6).

Further, the defendant does not establish that there has been "a change in the law" that would affect the length of his sentence were he sentenced today. U.S.S.G. § 1B1.13(b)(6). The defendant points to a case out of the United States District Court for the Western District of Wisconsin, in which the court recognized *Dean* as a change of law; but while *Dean* changed the law in the District of Wisconsin, it did not do so in this district. In *United States v. Roberson*, the United States Court of Appeals for the Seventh Circuit held that district courts could not consider the mandatory add-on sentence for brandishing under § 924(c) when determining the sentence for the

---

[7] U.S. Sentencing Commission, *Statistical Information Packet*, (2012), https://perma.cc/W45B-89CU.

11

underlying crime. 474 F.3d 432, 437 (7th Cir. 2007). When sentencing the defendant for bank robbery and brandishing, the *Ikegwuonu* Court "made clear . . . that it would have imposed a lower sentence but for *Roberson*." *Ikegwuonu*, 2021 WL 719160, at *2. After *Dean*, the district court was permitted to resentence the defendant with the effect of the mandatory minimum in mind. *Id.* (explaining that, "had [the defendant] been sentenced after *Dean*, the court would have had the authority to impose a sentence lower than the [sentence] it felt bound to impose by *Roberson*").

Here, though, the defendant does not point to a rule in the Fourth Circuit that was equivalent to *Roberson* in the Seventh Circuit. *See* ECF No. 43. Accordingly, the defendant does not establish that *Dean* represented a change of law that qualifies under U.S.S.G. § 1B1.13(b)(6).

### 2. Youth

The defendant's youth at the time of his offense does not constitute an extraordinary and compelling reason justifying sentence modification, because the evidence suggests that the defendant's crime was not primarily a result of youthful irresponsibility. *See Roper v. Simmons*, 543 U.S. 551, 570 (2005) ("The susceptibility of juveniles to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.'") (citing *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988) (plurality opinion)). The defendant argues that his youth at the time of the offense "in combination with other factors can support a modification of sentence." ECF No. 43 at 11. Although youth is not enumerated in Section 1B1.13(b), the Court will consider youth at the time of the offense under "other reasons." *See* U.S.S.G. §1B1.13(b)(5); *United States v. McCullers*, No. 4:07-cr-

12

49, 2023 WL 8251591, at *6 (E.D. Va. Nov. 29, 2023) (considering youth under U.S.S.G. § 1B1.13(b)(5)); *United States v. Carrington*, No. 3:09-cr-160, 2022 WL 617617, at *7 (E.D. Va. Mar. 2, 2022) (same).

In support of his motion, the defendant cites *Roper*, 543 U.S. at 570, to emphasize the "susceptibility of juveniles to immature and irresponsible behavior." ECF No. 53 at 3. The defendant asserts that, at 22, he reached "the nadir of a downward spiral that began at age 12," which led him to commit the offense he was sentenced for. ECF No. 43 at 11.

The defendant's argument is plausible. *See McCoy*, 981 F.3d at 279 (concluding that the defendants' ages at the time of their offenses—ranging from 19 to 24— favored granting compassionate release). He was 22 at the time of the offense, and he came from a rough upbringing. ECF No. 30 at 43–47; ECF No. 43 at 3. Indeed, juveniles are more vulnerable to negative influences and outside pressures. *Roper*, 543 U.S. at 558; *see* ECF No. 30 at 31–65 (noting the defendant's juvenile record). And it is likely that his youth did play some part in his decision to engage in the criminal conduct at issue here. However, the defendant's deliberate, planned act in the instant offense—armed bank robbery—combined with his previous criminal conduct, undermines the argument that his actions resulted primarily from youthful impulsivity.[8] *See* ECF No. 53 at 3.

---

[8] The defendant's criminal history shows an escalating progression of violent and theft related offenses. *See* ECF 30 at 61–65 (beginning with petit larceny, concluding with the instant offense).

13

Tragically, it is not uncommon for a person who is incarcerated for a violent crime to have had early childhood exposure to crime and violence. While the circumstances of the defendant's childhood and his youth at the time of the offense are certainly troubling, they are not so unusual as to amount to extraordinary and compelling reasons warranting a sentence modification.

### 3.   *Mother's Health Condition*

Additionally, the Court finds that the defendant's mother's worsening health condition does not constitute an extraordinary and compelling reason for a sentence modification, because the defendant is not the only available caregiver for his mother. The defendant represents that his mother suffers from "multiple health issues" that have "severely restricted" her mobility. ECF No. 43 at 4. The defendant's stepfather "works two jobs, more than 60 hours per week." *Id.* And because of her fall risk, the defendant's mother "is confined to her bedroom while [her husband] is at work." *Id.* The defendant requests to be released so that he can serve as his mother's caregiver "while other family members are absent." *Id.* at 11. The defendant does not, however, establish that he is the "*only* available caregiver" for his mother. U.S.S.G. § 1B1.13(b)(3)(C) (emphasis added). Therefore, the defendant's mother's health condition is not an extraordinary and compelling reason to modify the defendant's sentence.

### 4.   *COVID-19*

The defendant's risk of contracting COVID-19 does not constitute an extraordinary and compelling reason justifying sentence modification, because he has failed to show that he is particularly susceptible to serious illness from COVID-19. In

14

his *pro* se motion, the defendant argues that he is particularly susceptible to getting seriously ill from COVID-19 because (1) he is obese and (2) he has prediabetes. ECF No. 38 at 10.

The Centers for Disease Control and Prevention ("CDC") defines "obesity" as having a BMI of 30.0 or higher, but under 40.0.[9] The defendant's BMI is 30.8. ECF No. 43 at 4. Therefore, based on his BMI, the defendant is obese. The CDC advises that obesity "can make you more likely to get very sick from COVID-19" and that "[t]he risk of severe illness from COVID-19 increases sharply with higher BMI."[10] However, the defendant does not demonstrate that he faces a greater risk of serious illness in prison than he would face outside, if his sentence were modified. *Davis*, 99 F.4th at 655. As of July 9, 2024, there are no active cases of COVID-19 among inmates or staff at the defendant's facility.[11] In addition, over 60% (787 out of 1294) of the inmates have been vaccinated against COVID-19.[12]

The defendant represents that his prediabetes puts him "at an increased risk of death or serious illness form COVID-19." ECF No. 38 at 10. Courts in this district have deferred to the CDC's determination that individuals with prediabetes are not

---

[9] CDC, *Medical Conditions*, https://perma.cc/9CU7-4CAN (last visited July 10, 2024).

[10] *See supra* note 9.

[11] Federal Bureau of Prisons, *Inmate COVID-19 Data*, https://perma.cc/F9LU-JC22 (last visited July 10, 2024).

[12] Federal Bureau of Prisons, *supra* note 11.

considered to be at a higher risk of severe illness from COVID-19.[13] *United States v. Washington*, No. 3:20-cr-66, 2023 WL 6226103, at *5 (E.D. Va. Sept. 22, 2023); *United States v. Kimbrough*, No. 3:09-cr-220, 2022 WL 248548, at *4 n.4 (E.D. Va. 2022).

In addition, the defendant is 35 years old, ECF No. 30 at 2, which places him outside the age range that carries increased risk, as recognized by the CDC.[14] Moreover, the defendant has taken the Pfizer-BioNTech vaccine, which has reduced his risk of serious illness.[15] ECF No. 51 (SEALED) at 16. This counsels against finding extraordinary and compelling reasons that justify release. *See United States v. Bethea*, 54 F.4th 826, 832 (4th Cir. 2022).

Taken together, the defendant's health conditions and current prison facility do not pose a particularized risk of serious illness from COVID-19 such that relief is warranted. This conclusion is consistent with the Sentencing Commission's guidance. *See* U.S.S.G. § 1B1.13. The defendant is not "suffering from a terminal illness," he does not have a "serious physical or medical condition" or "serious functional or cognitive impairment," and his "physical or mental health" is not "deteriorating . . . because of the aging process." U.S.S.G. § 1B1.13 cmt. n. 1 at (A)(i). Nor is the defendant "at least 65 years old" or "experiencing a serious deterioration in physical

---

[13] CDC, *supra* note 10.

[14] CDC, *Underlying Medical Conditions*, https://perma.cc/7RVZ-YUCD (highlighting increased risk of death after age 50) (last visited July 10, 2024).

[15] CDC, *Overview of COVID-19 Vaccines*, https://perma.cc/7RD2-KZW7 (last visited July 10, 2024).

or mental health because of the aging process." *Id.* at (A)(ii). These factors, though not dispositive, counsel against issuing relief.

### 5. *Rehabilitation*

The defendant's rehabilitation does not constitute an extraordinary and compelling reason justifying sentence modification, because of his repeated institutional infractions. The defendant argues that his rehabilitation while incarcerated, evidenced by his participation in a "wide range of programming," warrants a sentence modification. ECF No. 38 at 13. He explains that he "is not the same young man who appeared before the Court for sentencing 12 years ago" and that he has "done absolutely everything in his power to make amends for his past actions." *Id.* at 15. The Court does not doubt that the defendant has made strides while in prison. Indeed, his rehabilitation is having a positive impact on others. *See* ECF No. 30 at 71. (letter of support describing the defendant's success as a mentor and commitment to "start a non-profit to help deter young people away from a trajectory towards prison and self-destruction"). That is certainly commendable.

However, the defendant's disciplinary history while incarcerated counsels against a sentence modification. The defendant has committed many serious institutional infractions, as recently as 2021. *See* ECF No. 46-2 (SEALED). (disciplinary record noting infractions for email abuse (2021); gambling (2021); assault (2020); threatening bodily harm (2020); refusing work assignment and refusal to obey order (2018); refusing work assignment (2017); engaging in sexual acts (2017); bribing a staff member (2017); refusing work assignment (2017); refusing work assignment (2017); being insolent to staff (2017); engaging in sexual acts (2017);

17

possession of a dangerous weapon (2015); assault (2015); possession of a dangerous weapon (2015); and fighting with another inmate (2014)).

Indeed, it is difficult to square the defendant's letter of support with his repeated, serious institutional violations. As a result, the Court finds that while the defendant has taken significant steps to improve himself, these steps are not "extraordinary and compelling" reasons that warrant sentence modification.

### b.     18 U.S.C. § 3553(a) Factors

Even if the defendant had demonstrated extraordinary and compelling reasons such that compassionate release might be warranted, the factors enumerated in 18 U.S.C. § 3553(a), when viewed in light of the health and circumstances of the defendant as discussed above, counsel against issuing relief.

The "nature and circumstances of the offense" for which the defendant was convicted are serious. The defendant took a loaded firearm to the robbery, forced an innocent bystander into the bank, and threatened to "shoot everyone" if the bank tellers did not comply with his demands. ECF No. 17 at ¶¶ 1, 5. Given the "seriousness of the offense," the sentence imposed must be sufficient to "promote respect for the law," provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2).

As to the "history and characteristics of the defendant," the Court is particularly influenced by the defendant's criminal history. 18 U.S.C. § 3553(a)(1). As discussed earlier, that history is lengthy, with multiple theft-related offenses. *See* ECF No. 30 at 61–65.

The "kinds of sentences available" and the "sentencing range" also counsel against granting compassionate relief. 18 U.S.C. § 3553(a)(3)-(4). The first count of the defendant's offense carries a maximum sentence of 25 years of imprisonment, and the second carries a mandatory minimum sentence of seven years. ECF No. 30 at 66. The defendant was sentenced to 204 months of incarceration. ECF No. 28 at 1–2 (120 months of incarceration for the Bank Robbery followed by a consecutive 84 months of incarceration for the § 924(c) offense). Modifying the defendant's sentence to 144 months of incarceration, as he has requested, would result in him serving just over 70 percent of the sentence imposed, which is well below the bottom end of the guidelines range. *See United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (district courts are "entitled to consider the amount of time [the defendant] already had served as one factor in the § 3553(a) analysis."). Given the nature of his conduct, 120 months of supervised release, as the defendant has requested, would not "reflect the seriousness of the offense, . . . promote respect for the law, . . . [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).[16]

No single fact in the defendant's background—whether positive or negative—sways the Court's determination as to the 18 U.S.C. § 3553(a) analysis, because the Court—as it must—has looked at the defendant's background as a whole, including whether the passage of time has changed the balance. However, after weighing the factors enumerated in 18 U.S.C. § 3553(a), the Court finds that sentence modification

---

[16] The Court considered the remaining sentencing factors in conjunction with its analysis in Part III.B.i.

is not warranted. Accordingly, the Motion for Compassionate Release will be **DENIED.**

## IV. CONCLUSION

Defendant Andrew Glenford Brown's Motion for Compassionate Release (ECF Nos. 38, 42) is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the defendant and to all counsel of record.

**IT IS SO ORDERED.**

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
July 10, 2024